## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VITOR DOCAJ,

        Plaintiff,

**v.**

ATLANTIC SPECIALTY INSURANCE
COMPANY ("Atlantic Specialty"),
and ONEBEACON AMERICA
INSURANCE COMPANY,

        Defendants.

Case No. 2:20-cv-10014-NGE-DRG
Hon. Nancy G. Edmunds
Mag. David R. Grand

_____/

## DEFENDANTS' AND COUNTER-PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Defendant/Counter-Plaintiff Atlantic Specialty Insurance Company
("Atlantic Specialty") and Defendant Lamorak Insurance Company,
incorrectly named and sued as One Beacon America Insurance Company
("OneBeacon America") (collectively "Atlantic") by their attorneys, Collins
Einhorn Farrell PC, move the Court, pursuant to Fed. R. Civ. P. 56, to enter
summary judgment in their favor.

There is no genuine issue of material fact that OneBeacon America is
an improper party defendant or that coverage is precluded under the

applicable occupational accident policy by the similar legislation exclusion because Plaintiff has an injury for which he is entitled to benefits pursuant to the Michigan No-Fault Act and the Social Security Act.

Additionally, to the extent this Court finds that coverage is not fully precluded by the similar legislation exclusion, any benefits due Plaintiff are controlled and limited by terms, conditions, exclusions and limitations in the policy.

In accordance with Local Rule 7.1(a), on May 27, 2020 counsel for Atlantic telephoned Plaintiff's counsel's office to seek concurrence. Plaintiff's counsel was not available.  Undersigned counsel left a message, but was advised by whomever answered the phone that concurrence would not be granted. Undersigned counsel then followed up with an email on May 28, 2020 which set out the bases on which Atlantic intended to seek summary judgment and provided her cell phone to discuss.  No response was received.

Atlantic has contemporaneously filed its Brief in Support setting forth the specific grounds and reasons in support of this Motion for Summary Judgment.

WHEREFORE, Atlantic requests that this Court grant it's Motion for Summary Judgment, enter a declaratory judgment in its favor declaring that Atlantic is entitled to reimbursement of $51,239.76 from Docaj, and dismiss Docaj's claims with prejudice.

Respectfully submitted,

COLLINS EINHORN FARRELL PC

BY:    *s/ Nicole E. Wilinski*
       Nicole E. Wilinski (P61904)
       *Attorneys for Defendants*
       4000 Town Center, 9th Floor
       Southfield, MI  48075
       (248) 355-4141
       nicole.wilinski@ceflawyers.com

Dated:  May 29, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

VITOR DOCAJ,                                    Case No. 2:20-cv-10014-NGE-DRG
                                                Hon. Nancy G. Edmunds
      Plaintiff,                            Mag. David R. Grand

**v.**

ATLANTIC SPECIALTY INSURANCE
COMPANY ("Atlantic Specialty"),
and ONEBEACON AMERICA
INSURANCE COMPANY,

      Defendants.
_____/


## BRIEF IN SUPPORT OF DEFENDANTS' AND COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>Concise Statement of the Issues Presented</u>

1.      Where Atlantic Specialty assumed all of OneBeacon America's obligations under the occupational accident policy, is OneBeacon America a proper party defendant?

2.      Given that Docaj is entitled to benefits pursuant to the Michigan No-Fault Act and the Social Security Act, does the similar legislation exclusion preclude coverage for his claims?

3.      Given that any coverage available under the occupational accident policy is controlled by the policy terms, conditions, exclusions and limitations, is it the case that:

   a.      Atlantic Specialty is entitled to be reimbursed for overpayments of TTD?

   b.      No Continuous Total Disability (CTD) Benefits are owed because Docaj's disability is principally due to a "Mental and Nervous or Depressive Condition"?

   c.      Covered Accident Medical Expenses do not include and benefits and are not payable for that portion of the fee for service or treatment which is more than the Usual and Customary Charge?

   d.      Benefits are only potentially available for Medically Necessary Covered Accident Medial Services?

   e.      No AME benefits are owed for services or treatment provided after July 22, 2018?

   f.      Coverage for treatment of Docaj's "Mental or Nervous" injury is limited to $500.00?

   g.      Docaj's settlement of the No-Fault Action precludes recovery of AME benefits?

h.   Docaj's right to recover under his no-fault policies precludes coverage for AME benefits?

i.   Mileage charges related to Docaj's injury are not covered?

## <u>Controlling or most appropriate authority</u>

Fed. R. Civ. P. 56

*Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625 (Ind. 2018).

> Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment. *Id.* at 629.

> When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning. *Id.* at 630.

## I.  Introduction

This case involves a dispute over insurance coverage. Docaj was injured in a motor vehicle accident. He has asserted claims against at least five insurance policies and recovered $422,500 from his no-fault insurers. But instead of using the money received from his no-fault insurers to reimburse his medical providers as he was required to do, Docaj has sued OneBeacon and Atlantic Specialty in an attempt to secure a duplicative recovery under an occupational accident policy issued by Atlantic Specialty.

The terms, conditions, exclusions and limitations in the Occupational Accident Policy control this dispute. Docaj is not entitled to benefits under the Occupational Accident Policy issued by Atlantic Specialty. In fact, Atlantic Specialty is entitled to reimbursement by Docaj for the $51,239.76 in Total Temporary Disability ("TTD") Benefits Atlantic Specialty paid.

## II.  Statement of Facts and Proceedings

Docaj was injured in a motor vehicle accident in Michigan on July 22, 2016. That accident occurred when he was driving his truck under dispatch for Reliable Transportation Specialists, Inc. an Indiana-based transportation company.[1] Atlantic Specialty issued to Reliable the Occupational Accident

---

[1] **Exhibit A,** Occupational Accident Policy for Reliable Transportation Specialists, Inc.," No. 216-000-145; **Exhibit L,** email confirming dispatch.

Policy under which Docaj now seeks benefits.[2] The Occupational Accident Policy provides discrete coverages for participating truck drivers.[3]

After the accident, Docaj sued four other insurers: Great American Insurance Company, who insured Docaj's truck under a non-trucking liability policy, with a Michigan Personal Injury Protection endorsement;[4] Lloyd's Insurance Company d/b/a Lloyds of London, which issued a physical damage policy for Docaj's truck;[5] Allied Property and Casualty Insurance Company, Docaj's personal auto insurer; and American Inter-Fidelity Exchange (AIFE), Reliable's auto insurer. Docaj also sued the at-fault driver, Elizabeth Nunez, for residual tort liability damages, and obtained a default when she failed to appear. That case was captioned: *Vitor Docaj v. Great American Assurance Company, et. al.*, Case No. 17-007187-NF, Wayne County Circuit Court ("No-Fault Action").

On May 13, 2019, Docaj signed a release agreement with four entities, Great American, AIFE, Allied, and Reliable, in return for a recovery of $422,500, most of which was paid by Great American ($407,500), with the

---

[2] **Exhibit A**.

[3] *Id.*

[4] Docaj registered his truck in Michigan.

[5] Lloyds of London was dismissed from the No-Fault Action as in improper party. See **Exhibit M,** Docaj's Answers to Atlantic's Discovery at ¶ 11.

balance paid by AIFE ($15,000).[6]

Docaj also filed for Social Security Disability and was determined to be disabled as of May 1, 2017, with a primary diagnosis of "depressive, bipolar and related disorders" and a secondary diagnosis of "disorders of the back (discogenic and degenerative).[7]

While the No-Fault Action was pending, Atlantic paid Docaj "Total Temporary Disability (TTD) Benefits" at the rate of $492.69 a week for 104 weeks (for a total of $51,239.76) without taking any allowable offsets. But, pursuant to the Occupational Accident Policy and subject to the $125 minimum weekly amount, Atlantic was entitled to reduce the TTD benefits paid to Docaj by the amount of the Social Security Disability Benefits Docaj received, the amount of any disability income benefits from Docaj's no-fault insurers, and the amount Docaj received as compensation for lost wages or income.[8]

Docaj's settlement with Great American, AIFE, Allied, and Reliable released all four entities from any further claims or obligations, "including

---

[6] A copy of the Release Of All Past, Present and Future No-Fault Claims is attached as **Exhibit B**.

[7] See Disability Determination and Transmittal, **Exhibit C**.

[8] **Exhibit A**, p. 12 of 29.

any past, present, and future benefits to which Docaj is or may become entitled.[9]" Docaj specifically agreed that he would use the settlement funds "to pay off any outstanding invoices or liens of providers prior to distribution of funds to Docaj.[10]" The release identified a host of bills and liens, including Atlantic's lien for wage loss benefits, for which Docaj assumed responsibility. He expressly promised:

> to be responsible for all bills and liens from all providers with the exception of [intervening providers] and agrees to indemnify and hold harmless [the settling defendants] from any claims against them by any providers or lienholders, including but not limited to:
> * * * *
> 10.3.27. Atlantic Specialty Insurance Company including but not limited to its potential lien claim in the amount of $49,083.43.

After learning of the settlement, Atlantic sent a letter to Docaj's attorney, dated May 28, 2019, enclosing a copy of the Atlantic occupational accident policy and formally asserting its lien against the settlement proceeds.[11] The lien amount by that time was $51,546.88.[12]

Docaj responded to Atlantic's lien letter by filing a motion, in the

---

[9] **Exhibit B**, ¶2.
[10] **Exhibit B**, ¶¶ 10.1 and 10.2.  The providers identified in the release are the same providers Docaj claims to still owe. See **Exhibit M,** ¶13.
[11] **Exhibit D**.
[12] *Id.*

settled proceedings, to strike the lien. Docaj claimed that the "PIP settlement was a lump sum payment which excluded wage and medical paid by Atlantic.[13]" There is, however, no such language in the release; rather, it expressly identifies Atlantic's lien as one of the claims for which Docaj is responsible.[14]

At the hearing on the motion, Docaj's counsel focused solely on Great American's policy.[15] That policy's Michigan Personal Injury Protection endorsement has a coordination and nonduplication of benefits clause, indicating that if an insured is entitled to personal protection benefits under more than one policy, the maximum recovery won't be more than the amount payable under the policy providing the highest dollar limit.[16] It also goes on to say that no person may recover duplicate benefits for the same expenses or loss.[17] Even though the Atlantic Occupational Accident Policy doesn't provide no-fault benefits, the court granted Docaj's motion to strike Atlantic's lien as to the funds paid by Great American.[18]

---

[13] **Exhibit E**, Motion to Strike Lien.
[14] See **Exhibit B** at ¶10.3.27.
[15] **Exhibit F,** Hearing transcript.
[16] **Exhibit G**, Great American policy at page 43 of 56.
[17] *Id.*
[18] Docaj's counsel drafted an order, which the court entered, stating that the Occupational Accident Policy is "primary for payment of health and

Docaj then directed the medical providers identified in the release —
the providers he promised to pay out of the settlement funds — to submit
their bills to Atlantic for payment. Despite promising to use the settlement
money to pay the medical providers, Docaj has not paid any of his medical
bills or the Medicaid lien.[19] Those providers are now contacting Atlantic for
payment of medical bills to the tune of roughly $300,000.[20]

Then, Docaj sued OneBeacon and Atlantic Specialty. Docaj complains
that he is entitled to benefits "under the terms and conditions" of the
Occupational Accident Policy.[21] Atlantic filed a counter-complaint, seeking
a declaratory ruling on the specific terms, conditions, exclusions, and
limitations of coverage under the Occupational Accident Policy.[22]

## III.   Argument

### A.   Rule 56 summary judgment standards

Summary judgment is appropriate where "the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there

---

accident benefits." **Exhibit H.** But, that order does not require Atlantic to pay
for services not covered under the Occupational Accident Policy. Atlantic
has paid — indeed, overpaid — for covered services.

[19] **Exhibit M**, ¶ 12.

[20] See **Exhibit I,** Claims history.

[21] Complaint ¶6, ECF No.  1-2, PageID.11.

[22] ECF No. 8.

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party has the initial burden of showing "the absence of a genuine issue of material fact." *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The evidence must be more than the non-movant's own "pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990).

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal quotation marks omitted). However, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479-80 (6th Cir. 1989). If the non-moving party fails to adequately respond to a summary judgment motion, the court properly relies on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The court should grant summary judgment whenever the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.    Standards for interpreting insurance contracts

The Occupational Accident Policy provides: "This Policy is governed by the laws of the state in which it is delivered."[23] The policy was delivered to Reliable in Chestergon, Indiana[24].

The Indiana Supreme Court has emphasized that "[m]atters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment." *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018). In addition, "[w]hen confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its

---

[23] **Exhibit A,** p. 2 of 29.
[24] *Id.*

plain, ordinary meaning." *Id*. at 630. That holds true even if enforcing the policy's terms limits the coverage available. *Schenkel & Schultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 550 (7th Cir. 1997). "Generally, insurers are allowed to limit liability in any manner which is not inconsistent with public policy and an unambiguous exclusionary clause is ordinarily entitled to enforcement." *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001).

"On the other hand, where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (citations and alterations omitted). "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Id*. "In insurance policies, an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Id*.

## C.   OneBeacon is not a property party defendant.

The Atlantic Specialty Policy must be enforced as written. Effective October 1, 2012, Atlantic Specialty assumed liability for policy #216-000-145,

originally issued by OneBeacon America Insurance Company.[25] As a result of Atlantic Specialty's assumption of liability, all references in the policy to OneBeacon America were changed to Atlantic Specialty.[26] The contract is clear, the policy in effect when Docaj was injured was issued by Atlantic Specialty. OneBeacon has no liability under the policy or to Plaintiff.

In fact, OneBeacon America no longer exists. OneBeacon America was sold by OneBeacon Insurance Group in 2014 and subsequently renamed Lamorak Insurance Company.[27] As a result, OneBeacon is not a proper party defendant and is properly dismissed from this lawsuit and removed from the caption.

### D. Because Docaj is entitled to benefits under No-Fault and Social Security laws, the Occupational Accident Policy precludes coverage.

The Occupational Accident Policy contains a general exclusion that precludes coverage for any "Injury" for which the "Insured Person" is entitled to benefits pursuant to any Workers' Compensation Law or "other similar legislation."[28] Docaj has an injury for which he is entitled to benefits

---

[25] **Exhibit A**, Certification of Assumption.
[26] *Id.*
[27] ECF No. 8, PageID.60-61.
[28] **Exhibit. A**, p. 18 of 29.

under similar legislation, namely, the Michigan No-Fault Act[29] and the Social Security Act. That means he is not entitled to coverage from Atlantic Specialty.

The Indiana Supreme Court enforced a similar provision where the insured received workers compensation and disability benefits after a semi-trailer accident. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 527 (Ind. 2002) (enforcing underinsured motorist coverage provision setting-off "all sums paid or payable under any workers' compensation, disability benefits or similar law"). It does not appear that Indiana courts have addressed whether no-fault laws are similar to workers compensation law. But Indiana jurisprudence suggests that Indiana courts would so find. *Cf. Waldridge v. Futurex Indus., Inc.*, 714 N.E.2d 783, 785 (Ind. Ct. App. 1999) (purpose of the Indiana Worker's Compensation Act is to grant compensation to employees without regard to fault, for injuries that are accidental in nature); and *Park v. Am. Cas. Ins. Co.*, 219 Mich. App. 62, 69 (1996) (purpose of the Michigan no-fault act is to allow claims "against one's own insurer for wage-loss and medical expenses arising from a motor vehicle accident.").

---

[29] Docaj asserts, in his motion to dismiss [ECF No. 16] that he is entitled to mandatory no-fault benefits. [PageID 207].

Michigan's No-Fault Act is similar to Workers' Compensation Law. *See Visconti v DAIIE*, 90 Mich. App. 477 (1979) (noting that Michigan's Workers Disability Compensation and its automobile insurance statutes were each based upon no-fault systems). Like Workers' Compensation Law, Michigan's No-Fault Act is a remedial statute, which provides benefits to those injured in an accident. The term "similar" is defined as "nearly but not exactly the same or alike; having a resemblance." Websters' New World College Dictionary, 3rd Edition (1997). Under that definition, the Michigan No-Fault Act is similar to Workers Compensation Law.

Social Security disability benefits are also similar to Workers Compensation benefits. "Workers' compensation benefits are social-welfare income-maintenance benefits. . . . All the social welfare programs—workers' compensation, unemployment compensation, social security old age, disability, and survivors benefits, no-fault automobile benefits, aid to families with dependent children, and general assistance—are directed to the same objective, income maintenance." *Drouillard v. Stroh Brewery Co.*, 449 Mich. 293, 308 n.4 (1995), citing *Franks v. White Pine Copper Div., Copper Range Co.*, 422 Mich. 636, 654 (1985).

Here, because the Occupational Accident Policy excludes coverage for

any Injury for which the Insured Person is entitled to benefits pursuant to any Workers' Compensation Law or other similar legislation, and Docaj is entitled to benefits pursuant to similar legislation – the Michigan No-Fault Act and Social Security Disability law - Docaj is not entitled to recover under the Atlantic policy.

> **E.    The plain language of the Occupational Accident Policy otherwise precludes or limits coverage for Docaj's claims.**

While the exclusion discussed above in section IV.D. provides a complete bar to coverage, various other provisions of the Occupational Accident Policy clearly limit or preclude coverage for Docaj's claims as well. Courts have enforced the plain language of occupational accident policies time and again, in a variety of circumstances. *See Atl. Specialty Ins. Co. v. Pastukov*, 750 F. App'x 909 (11th Cir. 2018) (finding that the language of the Atlantic Specialty occupational accident policy was clear, and affirming district court's order granting summary judgment and ruling that policy provided no coverage); *Estate of Jeffrey Lynn Filek v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 14-CV-14088, 2016 WL 5477222 (E.D. Mich. Sept. 29, 2016 (holding that insurer correctly denied coverage under the terms of the subject occupational accident policy); *Tippie v. OneBeacon Am. Ins. Co.*, No. 11-2066-JTM, 2012 WL 359721 (D. Kan. Feb. 2, 2012) (granting summary

judgment for OneBeacon and finding no benefits were due under its occupational accident insurance policy, based on the unambiguous policy language); *Leech v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CIV-08-444-RAW, 2009 WL 10693453 (E.D. Okla. July 22, 2009) (finding insurer was entitled under plain language of its occupational accident policy to reduce plaintiff's CTD benefits). This Court should do so as well.

### 1. Coverage for TTD Benefits is limited or precluded. Atlantic Specialty has overpaid and must be reimbursed.

### a. TTD Benefits are subject to offsets

The Occupational Accident Policy provides for Temporary Total Disability ("TTD") Benefit Offsets, as follows:

> Subject to the **Minimum Weekly Benefit Amount**, the **Total Disability Benefi**t will be reduced by: (1) Social Security Disability Benefits, excluding any amounts for which the **Insured Person's Dependents** may qualify because of the **Insured Person's** Disability; (2) Social Security Retirement Benefits; (3) Individual or Group Disability Benefits; (4) the amount of any disability income benefits from any automobile or no-fault policy or insurance; (5) the amount the **Insured Person** receives as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit; and (6) any income from employment or services, or from leasing the **Insured Person's** power unit. The Insured Person must provide tax schedules and returns to **Us** for the purpose of calculating this offset.[30]

According to the above provision, to the extent coverage was owed,

---

[30] **Exhibit A**, p. 12 of 29.

Atlantic Specialty was entitled to reduce the TTD benefits paid to Docaj, subject to a $125.00 weekly minimum, by the amount of the Social Security Disability Benefits Docaj received, the amount of any wage loss from Docaj's no-fault insurers and the amount Docaj received for lost wages or income in the settlement of the No-Fault Action. Here, that means that at most, Docaj was entitled to $13,000 in TTD ($125.00 per week * 104 weeks = $13,000).[31]

   **b. The Policy permits Atlantic Specialty to recover any overpayments from Docaj.**

The Occupational Accident Policy provides for a "Right to Recover Overpayments," as follows:

> **<u>Right to Recover Overpayments</u>**. In addition to any rights of recovery, reimbursement or subrogation provided to **Us** herein, when payments have been made by **Us** with respect to a **Covered Loss** in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of this **Policy**, **We** will have the right to recover such excess payment, from any person to whom such payments were made. **We** maintain the right to offset the overpayment against other benefits payable to the **Insured Person** (and his or her assignee) under this **Policy** to the extent of the overpayment.[32]

Pursuant to this policy provision, Atlantic is entitled to recover any

---

[31] Docaj's TTD was calculated at $492.69 per week. ECF No. 1-2, PageID.11. In addition, Docaj was determined to be disabled as of May 1, 2017. **Exhibit C.** He received $388.00 per month in social security disability payments, beginning not later than June 2018.  **Exhibit M**, ¶8. Further, Docaj received $422,500.00 in settlement of the No-Fault Action. **Exhibit B**.
[32] **Exhibit A**, p. 20 of 29.

and all overpayments of TTD Benefits paid to Docaj. If this Court agrees that coverage is not available under the Occupational Accident Policy in whole, Atlantic is entitled to reimbursement of all the TTD benefits paid -- $51,239.76. But at a minimum, Atlantic Specialty is entitled to reimbursement of TTD benefits that were subject to offset -- $38,239.76.

In addition, the Occupational Accident Policy provides Atlantic with a right to recover payments made in the event an Insured Person makes a recovery from a third party for a loss paid under the policy: "Recovery. In the event an **Insured Person** makes a recovery from a third party for a loss paid under this **Policy**, the **Insured Person** will reimburse **Us** up to the amount of the benefits made by **Us**."[33]

Docaj has recovered wage loss benefits from the Social Security Administration and his no-fault insurers. Thus, Atlantic is separately entitled to reimbursement for the TTD Benefits paid to Docaj under this policy provision.

Finally, the Occupational Accident Policy also provides for a right of subrogation as to all past or future payments made to the Insured Person from anyone liable for the Covered Injury:

---

[33] *Id.*

**Subrogation**. **We** have the right to recover all payments including future payments, which **We** have made, or will be obligated to pay in the future, to the **Insured Person**, beneficiary or any other person from anyone liable for the **Covered Injury**. If the **Insured Person**, beneficiary or any other person recovers from anyone liable for the **Covered Injury**, **We** will be reimbursed first from such recovery to the extent of **Our** payments to the **Insured Person**, beneficiary or any other person. The **Insured Person**, beneficiary or any other person agrees to assist **Us** in preserving Our rights against those responsible for such loss, including but not limited to, signing subrogation forms supplied by **Us.**[34]

Docaj has received $422,500 from his no-fault carriers in payment for claims arising from the July 22, 2016 motor vehicle accident. Pursuant to the Occupational Accident Policy's subrogation provision, Docaj must reimburse Atlantic for the $51,239.76 in TTD Benefits paid and will be obligated to reimburse Atlantic if any AME benefits are made in the future.

### 2.    Docaj does not qualify for CTD benefits.

The Atlantic Occupational Accident Policy provides for Continuous Total Disability ("CTD") Benefits only when certain qualifications are met. One of those qualifications is that the "Insured Person" must be granted a Social Security Disability Award for his disability. But, that disability cannot be principally due to a "Mental and Nervous or Depressive Condition."[35]

---

[34] *Id.*

[35] **Exhibit A**, p. 13 of 29.

"Principally" means "mainly." www.https://dictionary.cambridge.org . Its synonyms are chiefly and primarily. *Id.*

Docaj was awarded Social Security Disability based on a primary diagnosis of "depressive, bipolar and related disorders."[36] Because Docaj's Social Security Disability Award is principally due to a "Mental and Nervous of Depressive Condition" Atlantic does not owe CTD Benefits to Docaj.

### 3.    Coverage for AME benefits is precluded or limited

The Occupational Accident Policy is not a health insurance policy. The Policy describes when AME benefits are provided and includes limits as to how long benefits are covered as well as per injury and per accident limits on certain AME benefits. The Policy provides:

> If an **Insured Person** suffers an **Injury** that requires him or her to be treated by a **Physician**, within the **Medical Commencement Period** shown in the **Schedule**, **We** will pay the **Usual and Customary Charges** incurred for **Medically Necessary Covered Accident Medical Services** received due to that **Injury**, up to the **Maximum Benefit Amount** and **Maximum Benefit Period** shown in the **Schedule**, **per Insured Person**, for all **Injuries** caused by a single **Covered Accident**, subject to any applicable **Deductible Amount**.[37]

---

[36] **Exhibit C**, ¶16A.
[37] **Exhibit A**, p. 15 of 29.

### a. Coverage is limited to Usual and Customary Charges

"Usual and Customary Charge(s)" is defined as:

…a charge made for a **Covered Accident Medical Expense** Benefit that: (1) does not include charges that would not have been made if no insurance existed; (2) is the less of the usual charges for similar services, treatment, supplies, of **Hospital** room and board in the locality where the expense is incurred, or the negotiated rate of the **Preferred Provided** designated by **Us**. For a **Hospital** stay, the **Usual and Customary Charge** is based upon the expense for a semi-private room and board charge, unless the stay is a **Medically Necessary** stay in an extensive care until; and (3) with respect to drugs, in the negotiated rate of the Preferred Provided designated by **Us**, if applicable, of 124% of the Average Wholesale Price (AWP), if applicable.[38]

To the extent that any of Docaj's medical treatment is covered under the Occupational Accident Policy, any expense which exceeds the "Usual and Customary Charge" is excluded.[39]

### b. Coverage is limited to Medically Necessary Covered Accident Medical Services.

The Atlantic Occupational Accident Policy potentially provides coverage for "Medically Necessary Covered Accident Medical Services."

---

[38] **Exhibit A**, p. 17 of 29.

[39] In the event that this Court determines that coverage for certain AME benefits is owed, Atlantic Specialty will review the charges for those AME benefits and provide re-priced amounts to the extent they exceed the "Usual and Customary Charge."

"Medically Necessary" means:

> that a **Covered Accident Medical Service**: (1) is essential for diagnosis, treatment or care of the **Injury** for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a **Physician** and performed under his or her care supervision or order.[40]

To the extent that any of the medical benefits for which Docaj seeks coverage do not qualify as "Medically Necessary Covered Accident Medical Services" coverage is not available under the Occupational Accident Policy. For example, Community Resource Consultants, Inc. ("CRCI") provided case management services to Docaj in the amount of $38,612.18.[41] Those services do not qualify as "Covered Accident Medical Services" and Atlantic does not owe coverage for them under the Occupational Accident Policy.[42]

### c.   Coverage is limited by a Maximum Benefit Period of 2 years

When AME benefits are available under the Atlantic Occupational Accident Policy, they are limited to a "Maximum Benefit Period" of 104 weeks. "Maximum Benefit Period" is a defined term. It means: "the maximum period for which benefits will be payable for Covered Accident

---

[40] **Exhibit A**, p. 17 of 29.

[41] The CRCI invoice produced by Docaj totals $43,995.28. See **Exhibit J.**  The reason for the discrepancy in amount is unclear.

[42] See **Exhibit K**, February 18, 2020 letter from CRCI and April 6, 2020 letter to CRCI.

Medical Services for or in connection with a single Accident Medical Expense Covered Loss." The length of the Maximum Benefit Period is listed in the Schedule as 104 weeks.

Here, Docaj was injured on July 22, 2016. That means there is no coverage for any medical services provided after July 22, 2018. *See Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind. App. 2004) (insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability).

### d.     Coverage for Docja's mental health care is limited

AME benefits otherwise available under the Atlantic Occupational Accident Policy, are limited to the "Maximum Benefit Amount" in the Schedule. For outpatient treatment of Mental and Nervous conditions, the Maximum Benefit Amount is limited to $25.00 per visit for a maximum of 20 visits.[43] Inpatient treatment is limited to a maximum of $1,000 for any one Accident.[44]

The Policy defines "Mental and Nervous or Depressive Condition" as "mental, nervous or emotional diseases or disorders of any type including schizophrenia, dementia, organic brain syndrome, delirium, amnesia

---

[43] **Exhibit A,** p. 6-7 of 29.
[44] *Id.*

syndromes, and organic delusion or hallucinogenic syndromes."[45]

Docaj received treatment from multiple providers for mental and nervous or depressive conditions. Those providers include at least Ascension –Macomb Oakland Hospital (a/k/a St. John Macomb Hospital), Anthony Petrilli MD, PC, and Julie N. Sherbin-Sher, DO, PLLC.[46] Pursuant to the Policy, coverage for Docja's counseling for mental health care is limited to a maximum of $500 - $25.00 for the each of the first 20 outpatient visits. Atlantic Specialty is not aware of any inpatient treatment.[47] But, if Docaj received in-patient treatment, coverage is limited to $1,000.[48]

> **e.    Docaj's no-fault settlement precludes coverage for AME benefits.**

In addition, the Occupational Accident Policy contains an exclusion that precludes coverage for AME benefits with respect to any services or treatment which are provided for in a settlement or court judgment.[49] Docaj's settlement of the No-Fault Action included all of the medical expenses at

---

[45] **Exhibit A**, p. 23 of 29.

[46] **Exhibit N,** Invoices for treatment of Docaj's mental health conditions; **Exhibit M, ¶**13**.** In response to a direct request for payment, Atlantic Specialty instructed Ascension that coverage for Mental Health treatment is limited under the Policy. See **Exhibit P.**

[47] **Exhibit A,** p. 6-7 of 29.

[48] *Id.*

[49] **Exhibit A**, p. 16 of 29.

issue here.[50] As a result, the "settlement or judgment" exclusion applies and precludes coverage.

### f.   Docaj's other insurance coverage precludes coverage for AME benefits.

The Occupational Accident Policy also contains an exclusion that precludes coverage for AME Benefits with respect to services or treatment which are covered under any other insurance of any kind.[51] Docaj's medical services and treatment were covered under no-fault insurance. The "other insurance" exclusion applies and precludes coverage.

### g.   Mileage is not recoverable

The Occupational Accident Policy excludes from coverage any expense resulting from "any mileage charges related to the Covered Injury unless authorized by Us."[52] Atlantic Specialty did not authorize any mileage charges. As a result, the $114,469.76 claimed for medical transportation is not covered.[53]

---

[50] See, **Exhibit B**, ¶ 10. Excepted from the Settlement were amounts owed to The Pain Center USA PLLC and Interventional Pain Center.  Plaintiff does not seek to recover those amounts in this lawsuit.  See **Exhibit M,** ¶ 13.

[51] **Exhibit A**, p. 16 of 29.

[52] *Id.*

[53]  See  **Exhibit O,** billing statement from Alamerican Translation Transportation; **Exhibit M**, ¶13.

## IV.   Conclusion

The Occupational Accident Policy issued by Atlantic Specialty provides discrete coverage to truck drivers who are injured while under dispatch. Coverage under the Policy is controlled by the policy terms, conditions, exclusions and limitations. Docaj's lawsuit seeks to recover medical expenses and wage loss that have already been paid and are otherwise not covered under the Occupational Accident Policy.

WHEREFORE, Atlantic requests that this Court grant it's Motion for Summary Judgment, enter a declaratory judgment in its favor declaring that Atlantic is entitled to reimbursement of $51,239.76 from Docaj, and dismiss Docaj's claims with prejudice.

Respectfully submitted,

COLLINS EINHORN FARRELL PC

BY:   *s/ Nicole E. Wilinski*
Nicole E. Wilinski (P61904)
*Attorneys for Defendants*
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
nicole.wilinski@ceflawyers.com

Dated: May 29, 2020

## **PROOF OF SERVICE**

I hereby certify that on May 29, 2020, a copy of the foregoing instrument, along with the Index of Exhibits and exhibits, were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties to the above cause to each of the attorneys of record herein.

<div style="margin-left:3em">

COLLINS EINHORN FARRELL PC

BY:   *s/ Nicole E. Wilinski*
Nicole E. Wilinski (P61904)
*Attorneys for Defendants*
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
nicole.wilinski@ceflawyers.com

</div>

25