UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VITOR DOCAJ,

    Plaintiff/Counter-Defendant,

v.

ATLANTIC SPECIALTY
INSURANCE COMPANY,

    Defendant/Counter-Plaintiff.

_____/

Case No. 20-10014

Honorable Nancy G. Edmunds

**OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [42], DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [44], AND DEFENDANT'S MOTION FOR LEAVE TO FILE A NOTARIZED AFFIDAVIT [49]**

In this diversity suit, Plaintiff Vitor Docaj alleges Defendant Atlantic Specialty Insurance Company breached an occupational health and accident insurance policy it had issued when it refused to pay him benefits to which he is entitled following an occupational motor accident.[1] Defendant has filed a countercomplaint against Plaintiff, seeking a declaratory ruling as to its rights and obligations under the same policy. The matter is now before the Court on Plaintiff's motion for summary judgment (ECF No. 42), Defendant's motion for summary judgment (ECF No. 44), and Defendant's motion for leave to file a notarized affidavit (ECF No. 49). The parties have filed responses to all three motions (ECF Nos. 46, 47, 50) and Defendant has filed a reply in support of both of its motions (ECF Nos. 48, 52). Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided on the briefs and without oral argument. For the

---

[1] Plaintiff initially also named OneBeacon American Insurance Company as a defendant, but Atlantic states it assumed all liability from OneBeacon in 2012 and thus both parties agree OneBeacon is not a proper defendant and should be dismissed from this case.

1

reasons discussed below, the Court DENIES Plaintiff's motion for summary judgment, GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment, and DENIES Defendant's motion for leave.

## I. Background

Plaintiff incurred serious injuries in an occupational motor vehicle accident on July 22, 2016. Plaintiff was driving his truck under dispatch for Reliable Transportation Specialists at the time. Defendant had issued an occupational health and accident insurance policy ("the policy") to Reliable. (ECF No. 42-2.) Plaintiff subsequently filed claims with Defendant as well as three no-fault insurers for lost wages and medical expenses resulting from the accident. Plaintiff was later adjudged disabled as of May 1, 2017 for purposes of Social Security Disability Insurance with diagnoses of "depressive, bipolar and related disorders" and "disorders of the back."

### A. The No-Fault Action

On May 11, 2017, Plaintiff sued the three no-fault insurers in the Wayne County Circuit Court, seeking compensation for his lost wages and medical expenses ("the no-fault action"). While that litigation was pending, Defendant paid Total Temporary Disability ("TTD") benefits to Plaintiff at a rate of $492.69 per week for two years, totaling $51,239.76. Defendant attempted to intervene in the no-fault action, but Plaintiff opposed and successfully thwarted that intervention.

On May 1, 2019, Plaintiff settled his claims with the three no-fault insurers for $422,500. No-fault insurer Great American Insurance Company ("Great American") paid $407,500, the majority of the settlement. Another insurer paid $15,000, while a third paid nothing. In exchange, Plaintiff agreed to "be responsible" and "indemnify and hold

2

harmless" all three no-fault insurers from any claims against them by Plaintiff's medical providers or lienholders. Defendant was specifically mentioned as a lienholder in the settlement release due to its "potential lien claim" of approximately $50,000.

### B. The Motion to Strike

On May 28, 2019, Defendant sent a letter to Plaintiff's attorney asserting its lien claim. Defendant asserted that its policy's coordination of benefits ("COB") provision "provides an express right of reimbursement from any recovery obtained by Mr. Docaj for his injuries, including recovery made from other lines of insurance." The letter also averred that Defendant's coverage was "secondary" to the coverage of any other no-fault insurer under the policy.

Plaintiff then filed a motion to strike the lien in the post-settlement proceedings of the no-fault action. The state court held a hearing on the motion in which both Plaintiff and Defendant submitted briefs and presented oral arguments (although Defendant was not a party to the case, it appeared at the hearing as an "interested party"). Plaintiff asserted in the hearing that Defendant's COB provision was "trumped" by Great American's coverage provisions because the latter was a no-fault provider. The state court judge agreed, explaining on the record that "when there are two coordination of benefit clauses, unless the other clause is an ERISA plan, which there's no evidence that it is, the no-fault policy coordination would then trump the other policy."

On September 18, 2019, the state trial court entered a proposed order submitted by Plaintiff striking the lien and stating, "Atlantic Specialty Insurance Company (OneBeacon Insurance) is primary for payment of health and accident benefits." Later that day, Defendant filed a motion requesting the court strike entry of this order. Among

other alleged procedural defects, Defendant asserted that the order was inconsistent with the court's findings on the record because "the [c]ourt did not state and/or find" that it was "primary for payment of health and accident benefits" during the hearing. The court denied the motion to strike.

Defendant filed a claim for appeal with the Michigan Court of Appeals on November 25, 2019. On December 4, 2019, the Court of Appeals issued an order dismissing the appeal for lack of jurisdiction, noting that neither the initial order striking the lien nor the order denying reconsideration were "final" orders that could be appealed as of right. The order further explained that the denial was without prejudice and that Defendant was free to file a late appeal, which could be granted at the court's discretion. Defendant later submitted a delayed application for leave to appeal to the Michigan Court of Appeals on April 3, 2020. That application was granted on July 9, 2020.

### C. The Action Before This Court and Resolution of the State Appeal

On October 17, 2019, Plaintiff filed a second, separate action in the Wayne County Circuit Court, this time against Defendant. Defendant removed the case to this Court on January 2, 2020 based on diversity jurisdiction. Upon this Court's inquiry as to the amount in controversy, Defendant responded that Plaintiff's medical providers had submitted nearly $300,000 in claims to Defendant. According to Defendant, Plaintiff had directed the providers to seek payment from Defendant based on the language in the order striking the lien and finding that Defendant was the "primary" payer for medical benefits.

In this Court, Defendant filed a response and countercomplaint to Plaintiff's original complaint. Plaintiff moved to dismiss the countercomplaint, arguing that Defendant's claims were barred by the *Rooker-Feldman*, res judicata, and collateral estoppel doctrines

4

as a result of the state court order granting Plaintiff's motion to strike the lien claim asserted by Defendant on the settlement proceeds in the no-fault action. In light of the Michigan Court of Appeals having granted Defendant's application for leave to appeal the order striking the lien, rather than rule on the motion to dismiss, this Court stayed this case and held all pending motions in abeyance. In so doing, the Court noted that Defendant had requested the court of appeals vacate the trial court's order and allow the parties to adjudicate their claims in this Court.

On April 29, 2021, the Michigan Court of Appeals issued an opinion and order, granting Defendant the relief it requested and vacating the state court order striking the lien. (ECF No. 38-1.) The court found that the trial court had violated Defendant's procedural due process rights by entering an order stating Defendant "is primary for payment of health and accident benefits" without giving Defendant notice or a meaningful opportunity to be heard on that issue. The court further found that the trial court had violated Defendant's substantive due process rights because it arbitrarily disregarded the terms of Defendant's policy.

After Defendant filed a notice informing this Court that the state court appeal was decided, the Court lifted its stay of this matter. The matter is now before the Court on cross-motions for summary judgment and Defendant's motion for leave to file a notarized affidavit in support of its motion.

## II.    Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the

light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III. Analysis

Plaintiff argues he is entitled to Temporary Total Disability ("TTD") benefits, Continuous Total Disability ("CTD") benefits, and Accident Medical Expense ("AME") benefits under the occupational accident policy issued by Defendant. More specifically, he seeks $21,560.24 in TTD benefits, $69,921.00 in CTD benefits (as of the date of the filing of his motion), and $550,617.95 in AME benefits. Defendant argues that not only is Plaintiff not entitled to any benefits under the policy but that it is entitled to reimbursement from Plaintiff in the amount of $51,239.76 due to the TTD benefits it paid him during the pendency of the no-fault action.

### A. Applicable State Law

The parties first dispute which state law governs this lawsuit. The policy itself states it "is governed by the laws of the state in which it is delivered." (ECF No. 42-2, PageID.1323.) Defendant avers that the policy was delivered to Reliable in Indiana and therefore Indiana law applies, while Plaintiff states the policy was delivered to him in Michigan and thus Michigan law applies. Despite arguing that Indiana law applies here, however, Defendant cites to Michigan caselaw in support of some of its arguments. For this reason and because the general legal principles are similar in both states, the Court will apply Michigan law without addressing the parties' arguments regarding the choice of law provision.[2]

Michigan courts read insurance policies using "the same contract construction principles that apply to any other species of contract." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). "[U]nambiguous contracts are not open to judicial construction and must be *enforced as written*." *Id.* at 30 (emphasis in original). Ambiguous provisions are construed against the insurer and in favor of coverage. *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 504 (Mich. 1995). Insurance policies are given their "ordinary and plain meaning if such would be apparent to a reader of the instrument." *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (internal quotation marks and citation omitted). The meaning and legal effect of contractual provisions are legal questions that courts decide. *See id.*

---

[2] The Court will highlight the one aspect of the analysis where there may arguably be a difference (in section III.B) but finds the outcome of this case would remain the same regardless of which state law is applied.

When deciding whether an insured is entitled to insurance benefits, the first question is whether "the policy provides coverage to the insured. If it does, [courts] then ascertain whether that coverage is negated by an exclusion." *Heniser*, 534 N.W.2d at 510 (internal quotation marks and citation omitted). The insured carries the burden of demonstrating his claim falls within the terms of the policy, *see id.*, while the insurer has the burden to prove that one of the policy's exclusions apply, *see Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 539 (Mich. Ct. App. 2015) (citations omitted).

**B.  General Exclusion**

Defendant first argues Plaintiff is not entitled to coverage due to a general exclusion in the policy for losses resulting from "any Injury for which the Insured Person is entitled to benefits pursuant to any Workers' Compensation Law or other similar legislation." (ECF No. 42-2, PageID.1339.) According to Defendant, both the Michigan no-fault statute and the Social Security Act, under which Plaintiff is entitled to benefits, fall within this exclusion.

Plaintiff relies on *Michigan Head & Spine Inst., P.C. v. Auto Club Ins. Ass'n*, No. 313208, 2014 Mich. App. LEXIS 1632 (Mich. Ct. App. Sept. 4, 2014), to argue the no-fault act and workers' compensation law are not similar. There, the policy had a provision excluding losses for which the insured "claims coverage under any workers' compensation, employers' liability, occupational disease or similar law." *Id.* at *3. The court found Michigan's no-fault statute not a "similar law" within the meaning of the policy because it was not specifically named in the provision and because the other laws are all work-related, unlike the no-fault statute. *Id.* at *4. Defendant argues an Indiana court may reach a contrary result, but it acknowledges there is no Indiana caselaw on point and

8

instead relies in large part on its argument that both no-fault and workers compensation legislation are based on no-fault systems. Despite this similarity, however, each law serves a different purpose. The no-fault statute requires vehicle owners to obtain no-fault insurance for property damage, health-care benefits, and wage-loss resulting from a motor vehicle accident while the purpose of workers' compensation disability benefits is to compensate an injured worker for any loss of earning capacity resulting from a disabling industrial injury. *See Crawford v. Anderson Trucking Serv.*, No. 07-15423, 2009 U.S. Dist. LEXIS 36264, at * 20-21 (E.D. Mich. April 30, 2009). The disability provisions of the Social Security Act also compensate for wage loss, but that legislation is not work-related and is governed by different standards. Because of these differences, the Court declines to find that the Michigan No-Fault Act and the Social Security Act are "similar" to Workers' Compensation Law for purposes of the general exclusion here. Thus, this provision of the policy does not serve as a complete bar to Plaintiff's claims and Defendant's motion is denied to the extent it seeks such a ruling.

### C. Other Limits

Defendant argues that even if the Court finds that coverage is not fully precluded by the "similar legislation" general exclusion, the terms of the policy significantly limit TTD benefits, preclude CTD benefits, and preclude or, alternatively, limit AME benefits.

### 1. TTD Benefits

Defendant argues that it is, at the least, entitled to reimbursement of $38,239.76 in TTD benefits,[3] because the policy provides for offsets for social security disability

---

[3] This is the $51,239.76 in TTD benefits paid minus $13,000.00 in minimum TTD benefits provided by the policy (the $125.00 minimum weekly amount * 104 weeks).

9

benefits and the amount the insured receives from a settlement of a lawsuit and includes a right to recover overpayments.[4]  (*See* ECF No. 42-2, PageID.1333, 1341.)  Plaintiff agrees that the TTD benefits are subject to offset for any social security benefits received but argues Defendant is not entitled to any reimbursements because the TTD benefits are not subject to offset for the amount Plaintiff received from the settlement in the no-fault action and because he was underpaid TTD benefits.

The Court first addresses Plaintiff's argument that he was entitled to TTD benefits at the higher rate provided for Class II contract drivers, rather than the rate he received for Class I owner-operators.[5]  According to the policy, a Class I owner-operator must "own or lease a power unit," while a Class II contract driver must "be authorized by an Owner-Operator or motor carrier to operate a power unit owned or leased by an Owner-Operator." (ECF No. 42-2, PageID.1325.)  The policy explicitly states that "[t]he Contract Driver must neither own nor lease the power unit." (*Id.*)  Here, the record shows Plaintiff owned the truck he operated while under dispatch for Reliable.  (ECF Nos. 44-6, 48-2.)  Thus, Plaintiff was not entitled to benefits at the higher rate provided for Class II contract drivers under the policy.

---

[4] In addition to the general exclusion discussed above, Defendant also cites to a subrogation provision in the policy to argue it is entitled to reimbursement of the TTD benefits in full.  But that clause applies to payments recovered "from anyone liable for the Covered Injury" and thus does not apply to the settlement amount Plaintiff received from his no-fault carriers.

[5] For purposes of both the TTD and CTD benefits, the benefit is calculated for Class I owner-operators at 33% of the gross income the insured person received in the prior year but for Class II contract drivers at 75% of their gross income.  Plaintiff uses this formula to argue he was entitled to $700.00 per week in TTD benefits (the maximum weekly benefit amount) instead of the $492.69 paid by Defendant.  The $207.31 per week differential for 104 weeks leads to his request of $21,560.24 in TTD benefits.

Plaintiff next argues TTD benefits are not subject to offset for the amount Plaintiff received from the settlement in the no-fault action. The policy provides for TTD benefit offsets, "Subject to the Minimum Weekly Benefit Amount," for:

> (1) Social Security Disability Benefits, excluding any amounts for which the Insured Person's Dependents may qualify because of the Insured Person's Disability; (2) Social Security Retirement Benefits; (3) Individual or Group Disability Benefits; (4) the amount of any disability income benefits from any automobile or no-fault policy or insurance; (5) the amount the Insured Person receives as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit; and (6) any income from employment or services, or from leasing the Insured Person's power unit.

(ECF No. 42-2, PageID.1333.)

Plaintiff first proposes a strained reading of this provision to argue the "excluding" following the comma in subsection (1) applies to (5). The Court rejects this argument, finding that the semicolon at the end of the first item indicates that the word "excluding" carves an exception for "any amounts for which the Insured Person's Dependents may qualify because of the Insured Person's Disability" from the amount offset for "Social Security Disability Benefits." A plain reading of the policy further indicates that any TTD benefits are subject to offset for "the amount the Insured Person receives as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit."

Plaintiff next cites to Federal Rule of Evidence 408 to argue the settlement is inadmissible in this action. However, that rule prohibits the admission of a settlement to prove the validity or amount of a claim but does not preclude its admission for other purposes. *See Appalachian Reg'l Healthcare Inc.*, 824 F. App'x 360, 373 (6th Cir. 2020) (holding the district court did not commit plain error in allowing a party to use statements made during settlement negotiations to support the reasonableness of the settlement, which was necessary for it to succeed on its indemnity claim). Thus, the Court finds it

11

may consider the settlement for the purpose of determining whether the TTD benefits are subject to offset under the policy.

In sum, the Court rejects Plaintiff's arguments with regard to the TTD benefits and denies his motion as to these benefits. And because Plaintiff was provided TTD benefits at the proper rate but those benefits are subject to offsets due to the social security benefits and settlement Plaintiff received, the Court further finds that Defendant is entitled to reimbursement in the amount of $38,239.76 in TTD benefits under the policy. Thus, the Court grants Defendant's motion for summary judgment in part as to this claim.

### 2. CTD Benefits

To qualify for CTD benefits under the policy, Plaintiff must have been granted a Social Security Disability Award for his disability and his disability cannot "principally [be] due to a Mental and Nervous or Depressive Condition," among other qualifications. (ECF No. 42-2, PageID.1334.) Defendant argues that because the Social Security Disability Award itself lists Plaintiff's primary diagnosis as "depressive, bipolar and related disorder,"[6] (ECF No. 44-8, PageID.1877), Plaintiff is not entitled to CTD benefits as a matter of law. But Plaintiff believes he is entitled to a judgment in his favor on this claim because he has provided the affidavits of his primary treating physicians, who have opined that he "did not sustain any mental and nervous condition" as a result of the underlying occupational accident and was instead disabled due to "multiple physical injuries" he sustained in that accident, and there is no testimony to the contrary in the record. (*See* ECF Nos. 42-4, 42-20.)

---

[6] The secondary diagnosis is "disorders of back (discogenic and degenerative)."

Plaintiff argues that the Social Security Administration is not a "physician" under the policy and its determination does not constitute a medical diagnosis. But as Defendant notes, the Social Security determination was based on a report prepared by a psychologist, Leonard Balunas, Ph.D. (ECF No. 44-8, PageID.1877.) The policy defines a "physician," in relevant part, as "a practitioner of the healing arts within the scope of his or her license," (ECF No. 42-2, PageID.1345), which may encompass a licensed psychologist. Thus, in light of the conflicting evidence in the record, the Court finds the issue of whether Plaintiff's disability is "principally due to a Mental and Nervous or Depressive Condition" cannot be resolved on summary judgment. Because there is a genuine question of fact regarding this issue, both motions for summary judgment are denied to the extent they seek a judgment as to the CTD benefits.[7]

### 3. AME Benefits

The policy includes a provision excluding coverage for AME benefits with respect to "services or treatment which are covered under any other insurance of any kind." (ECF No. 42-2, PageID.1337.) Because Plaintiff's medical services and treatment were covered by the no-fault insurance policy provided by Great American, Defendant argues Plaintiff is not entitled to AME benefits under the policy here due to this exclusion. Plaintiff argues that this exclusion does not apply because a no-fault insurer is not primarily liable under Michigan law where a coordination clause exists. *See Primax Recoveries v. State Farm Mutual*, 147 F. Supp. 2d 775, 784 (E.D. Mich. 2001) (noting that in Michigan no-fault insurers may become secondarily liable for insurance coverage "where there is

---

[7] Under the policy, the CTD benefits are subject to the same offsets as the TTD benefits.

another form of health care coverage *and* where the insurers *both* seek to escape liability through the use of competing coordination of benefit clauses").

In support of his argument, Plaintiff points to the following provision entitled "Coordination and Nonduplication" in Great American's policy: "a. If an 'insured' is entitled to personal injury protection benefits under more than one policy, the maximum recovery under all policies [shall] not exceed the amount payable under the Policy providing the highest dollar limit. b. No person may recover duplicate benefits for the same expenses or loss." But as Defendant notes, the Michigan Court of Appeals has construed a similarly worded provision as an anti-stacking clause. *See O'Hannesian v. Detroit Auto. Inter-Insurance Exchange*, 312 N.W.2d 229, 230-31 (Mich. Ct. App. 1981). An anti-stacking clause "precludes duplication of benefits where more than one no-fault motor vehicle policy is involved." *See Wiltzius v. Prudential Property & Casualty Co.*, 361 N.W.2d 797, 799 (Mich. Ct. App. 1984). By contrast, section 3109a of Michigan's no-fault act, which authorizes coordination of benefits clauses, prevents "overlapping insurance coverage by requiring automobile insurers to offer deductibles of exclusions which wrap-around a policyholder's health and accident coverage." *Id.* at 799-800 (internal quotation marks and citation omitted).

In sum, because Plaintiff's medical expenses were covered by the no-fault insurance policy provided by Great American and there is no coordination of benefits clause in that policy that would render Great American secondarily liable, the "other insurance" exclusion in the policy here precludes coverage for AME benefits. Thus, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion as to these benefits.

Because the Court finds Plaintiff is not entitled to AME benefits under the policy, the Court need not address the parties' remaining arguments regarding the proper calculation of an AME award or any limitations to such an award, including those that go to whether Plaintiff's medical expenses exceed the "usual and customary charge." And because the notarized affidavit Defendant seeks leave to file relates to whether the charges were "usual and customary," the motion for leave is moot.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Defendant's motion for leave is DENIED as moot. While there is a question of fact that precludes summary judgment in favor of either party with regard to the CTD benefits, this order resolves the parties' arguments regarding the TTD and AME benefits. More specifically, the Court finds that Plaintiff is not entitled to an award in any amount for TTD and AME benefits, while Defendant is entitled to reimbursement in the amount of $38,239.76 for overpayments of TTD benefits.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: April 2, 2022


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 2, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager